**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

FEDERAL TRADE COMMISSION,

                Plaintiff,

      v.

CIRCA DIRECT LLC, ANDREW
DAVIDSON,

                Defendants.

Civil No. 11-2172 RMB/AMD

**OPINION AND ORDER**

On February 10, 2012, Plaintiff Federal Trade Commission (the "FTC") and Defendants Circa Direct LLC and Andrew Davidson (the "Defendants") requested that this Court approve a Stipulated Final Order for Permanent Injunction and Other Equitable Relief (the "Stipulated Order")[Docket No. 37] settling the FTC's claims against the Defendants Circa Direct LLC and Andrew Davidson (the "Defendants").  The parties submitted the Stipulated Order with no accompanying brief and the Stipulated Order itself neither outlines the legal standard for Court approval nor sets forth facts that would justify approval under that standard.

Consequently, on February 22, 2012, this Court requested further briefing as to the proper standard of review of the Order.  The Court also requested briefing as to whether the Stipulated Order satisfied that standard in light of certain concerns identified by the Court. The parties filed their respective briefs, both advocating approval of the Stipulated Order.  Additionally, on March 26, 2012, the Court received a letter from FTC Commissioner J. Thomas Rosch.  Although the parties' briefing has addressed many of the concerns identified by the Court, for the reasons discussed below, the Court will require further briefing from the FTC.[1]

A.   Background

1.   The Stipulated Order

The FTC alleges that the Defendants engaged in deceptive acts or practices in the marketing of acai berry-based weight loss products.  The Stipulated Order provides for both a monetary judgment of $11,500,000, to be suspended subject to certain conditions, and a permanent injunction against the Defendants Circa Direct LLC and Andrew Davidson (the "Defendants").  (Order at 16-17.)  The Order further provides that its entry "is in the public interest." (Order at 3.) Despite the FTC's allegations that Defendants have violated the

---

[1]   The Court will not, at this time, require further briefing from the Defendants.

Federal Trade Commission Act by engaging in deceptive acts or practices, the Order contains no admission by the Defendants of any wrongdoing. Rather, Defendants accept the terms of the Order "without admitting the allegations [of wrongdoing] set forth in" the Complaint and "without any admission or finding of liability". (Order at 2-3.)

The Stipulated Order also contains a "carve out" allowing for funds that would otherwise be subject to the monetary judgment to be used to pay the reasonable attorney's fees of the Defendants, subject to the approval of either the FTC or the Court. (Order at 17.) According to a letter filed by Defendants on February 14, 2012 [Docket No. 35], the parties have been unable to reach an agreement on attorney's fees. That dispute is now before the Court upon a separate motion [Docket Nos. 40, 45, 48].

2.   The Court's Order

As alluded to above, to address concerns raised in SEC v. Citigroup Global Markets, Inc., this Court ordered supplemental briefing. Citigroup, No. 11 Civ. 7387, 2011 WL 5903733 (S.D.N.Y. Nov. 28, 2011). The Citigroup court held that it could not approve the settlement of a Securities and Exchange Commission (the "SEC") enforcement action where, like here, the settlement (the "SEC Settlement") awarded monetary damages and imposed injunctive relief, but permitted the defendant to settle without

admitting to any of the allegations lodged against it.  Id. at
*4.  The court reasoned that it was required, before approving
the SEC Settlement, to ensure that the SEC Settlement was fair,
adequate, reasonable, and in the public interest.  Id. at *3.
It also acknowledged the "substantial deference" afforded to the
views of administrative bodies, like the SEC, in their areas of
authority.  Id.  However, the court concluded, notwithstanding
this deference, that without any admission by the defendant, it
lacked the factual predicate necessary to find that the proposed
settlement was fair, adequate, reasonable, and in the public
interest.  Id. at *4.

This Court noted in its supplemental briefing order that
similar concerns were present here.  Federal Trade Comm'n v.
Circa Direct LLC, No. 11-2172, 2012 WL 589560, at *2 (D.N.J. Feb.
22, 2012)(citing to Federal Trade Comm'n v. Standard Fin. Mgmt.
Corp., 830 F.2d 404, 408 (1st Cir. 1987)("When a public agency
requests that a judicial stamp of approval be placed on a
negotiated consent decree . . . [t]he court, rather than blindly
following the agency's lead, must make its own inquiry into the
issue of reasonableness before judgment.")(quotation
omitted)(citing to SEC v. Randolph, 736 F.2d 525, 529 (9th Cir.
1984)(holding that a consent decree should be approved unless it
is "unfair, inadequate, or unreasonable" but noting that the
decision to approve or reject a settlement is committed to the

sound discretion of the trial judge)); Citigroup, 2011 WL
5903733, at *2 (recognizing that the "court cannot grant the
extraordinary remedy of injunctive relief without considering
the public interest."); Federal Trade Comm'n v. Onkyo U.S.A.
Corp., No. 95-1378, 1995 WL 579811, at *1 (D.D.C. Aug. 21,
1995)(requiring the FTC to submit a statement supporting the
finding contained in a consent decree, submitted to the court
for its approval, that entry of the proposed judgment is in the
public interest)).  In particular, the Court noted that the
Order provides no factual predicate:

> (1)  to determine the appropriateness of the $11,500,000
>      monetary judgment considering that the Complaint does
>      not specify the damages sought and there are no
>      established facts as to the extent of the alleged
>      wrongdoing at issue;
>
> (2)  to determine the appropriateness of the actual amount
>      of damages that, because the judgment is suspended
>      subject to certain conditions, will actually be
>      recovered;
>
> (3)  to determine whether those monetary damages would be
>      appropriate, in light of the attorney's fees carve out,
>      which the Order does not resolve, and that could
>      threaten to swallow the damages award; and
>
> (4)  that demonstrates why approval of the settlement would
>      be in the public interest.

Circa Direct, 2012 WL 589560, at *2.

Because the Stipulated Order arrived with only a brief
cover letter, the Court ordered the parties to address the
following issues by written submission:

(1)  whether the Order should be subject to the same
standard of review before approval, as found in
Citigroup, that is, is the settlement fair, adequate,
reasonable, and in the public interest;

(2)  if the standard articulated in Citigroup is not
applicable here, what standard applies, and whether
it is satisfied;

(3)  assuming that the Order is subject to the same
standard as held in Citigroup, is the Order fair,
adequate, reasonable, and in the public interest, in
light of the concerns articulated by this Court and by
the court in Citigroup; and

(4)  how this Court could approve an Order that binds it to
award reasonable attorney's fees, which must be
deducted from the total monetary judgment and that are
uncapped, without knowing the extent of those fees
before approval.

Id.

3.   The Supplemental Briefing

The parties timely responded to the Court's order.  The

parties' papers clarify that:

(1)  the parties agree that the standard articulated
in Citigroup is the applicable standard;

(2)  the $11,500,000 judgment is based on the
Defendants' gross revenue;

(3)  the FTC expects that the actual amount of damages
(assuming the Defendants comply with the terms of
the settlement) will be approximately $2.89
million and that this figure represents all of
Defendants' remaining assets;

(4)  Defendants have requested $250,076.50 in
attorney's fees and $6,139.47 in expenses; and

(5)  settlement negotiations were conducted at arms-
length over a period of months between the FTC
and counsel for the Defendants and were, at times,

"contentious". [Declaration of James A. Prunty at ¶¶ 14.B, 19, 25, Docket No. 42; Motion for Attorneys Fees, Docket No. 40; Letter from Edwin M. Larkin, Docket No. 43].

The papers also indicate that, while the Defendants' operating structure makes an assessment of actual consumer loss difficult, the $11.5 million Defendants earned as a result of their allegedly deceptive practices "represents only a fraction of consumer loss" as a result of the fraudulent marketing at issue, as Defendants were only marketers, paid on commission, for third parties who actually sold the products at issue. [Declaration of James A. Prunty at ¶¶ 20, 23].

    4.   Commissioner Rosch's Letter

    In connection with the FTC's supplemental briefing, this Court also received a letter submission from FTC Commissioner J. Thomas Rosch. [Docket No. 49]. In the letter, Commissioner Rosch writes that, in his view, the FTC's submission "suffers from two failings." First, the FTC's submission fails to mention the text of Section 13(b), which he asserts requires this Court to consider both the FTC's likelihood of success in litigation and the public interest before approving a settlement and both of which are implicated by a lack of an admission by the Defendants. Second, he questioned the level of deference the FTC's decision is owed and the notion that this Court "should simply 'rubber-stamp' an agency decision".

5.   The Second Circuit's Decision

Following the parties' briefing, but prior to Commissioner Rosch's letter, on March 15, 2012, the Second Circuit issued an opinion on a request for a stay by the parties to the Citigroup action. SEC v. Citigroup Global Markets, Inc., 673 F.3d 158 (2d Cir. 2012).  The Circuit Court granted the parties' application for a stay finding that the parties had demonstrated all the factors necessary for a stay, including a likelihood of success on the merits of its claim that the District Court had improperly rejected the settlement at issue there.   Id. at 160-61.

II. Analysis

The parties' submissions, the Second Circuit's decision, and Commissioner Rosch's letter have all helped advance the Court's inquiry.  They also, however, leave certain questions unanswered and, in fact, raise new questions.  The Court turns to these questions and its current understanding of the applicable law it must apply.

A.   The Applicability Of Section 13(b)

Commissioner Rosch suggested in his letter that this Court is bound by Section 13(b) of the FTC Act (15 U.S.C. § 53), which the FTC cited as the authority for the Court to award injunctive relief prior to settlement.   The Commissioner asserts that, under Section 13(b) of the FTC Act, courts may order a permanent

injunction only upon receipt of "proper proof" including whether the FTC is likely to succeed on the merits and whether the injunction is in the public interest.  In Commissioner Rosch's view, a failure to obtain an admission of liability implicates both these factors.

Although Commissioner Rosch was only expressing his own personal views on the issue, and not those of the FTC, his points merit consideration and a response from the FTC, which has not offered its view of the applicability of Section 13(b) to this proceeding.  The FTC should therefore address in supplemental briefing: (1) whether the District Court is bound by Section 13(b)[2]; (2) if it is, whether it complements or displaces the Citigroup analysis discussed above; and (3) the proper scope of this Court's review under Section 13(b) and how the Stipulated Order satisfies it, particularly (i) the Court's ability to find a likelihood of success on the merits without an admission of liability by the Defendants and with no evidentiary

---

[2]    But see City of El Paso, Tex. v. El Paso Entm't, Inc., No. 11-50450, 2012 WL 874675, at *8 (5th Cir. Mar. 15, 2012)(recognizing that it is the agreement of the parties, rather than the force of law on which the complaint was originally based, that creates the obligations embodied in a consent decree)(citing to Local No. 93, Int'l. Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 525 (1986)(holding that a federal court could enter a consent decree containing broader relief than the court could have awarded after a trial)); Harris v. Pernsley, 820 F.2d 592, 603 (3d Cir. 1987)("The source of the district court's authority to enter a consent decree is the parties' agreement."); People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205, 961 F.2d 1335, 1337 (7th Cir. 1992)("True, when the imprimatur of the injunction joins the parties' agreement, the result is more than a contract, but the source of authority to require the parties to act remains their acquiescence rather than rules of law.").

submissions before the Court and (ii) the scope of the public interest review contemplated by the statute and whether the Court may consider the lack of an admission by the defendant in its public interest analysis under the statute.

### B.   The Citigroup Standard

Assuming, however, that Section 13(b) does <u>not</u> apply or that it supplements the Court's review under the <u>Citigroup</u> standard, this Court will need to consider whether the Stipulated Order is fair, adequate, reasonable, and in the public interest.  Accordingly, the Court addresses, first, whether the Stipulated Order is fair, adequate, and reasonable, and, second, whether the Stipulated Order is in the public interest.

### 1.   Fairness, Adequacy, And Reasonableness

An admission of liability may not be necessary to assess the fairness, adequacy, and reasonableness of a proposed settlement where the parties have provided sufficient context for the settlement terms.  In particular, courts can consider: (1) the claimed damages; (2) the amount of damages actually recovered; (3) the defendants' financial resources; (4) the relative strength and weakness of each side's case; (5) the costs of further litigation; and (6) whether the settlement was a product of informed arm's length bargaining. <u>Citigroup</u>, 673 F.3d at 163-66 (2d Cir. 2012)(holding that a court could look to

the context of the settlement in assessing its fairness, adequacy, and reasonableness). Although the Stipulated Order here did not provide that meaningful context, the supplemental briefing has done so in some respects.

Accepting the parties' representations that the $2.89 million in damages represents <u>all</u> of Defendants' remaining assets[3], the FTC could not have obtained a better monetary recovery if it had prevailed at trial. Clearly then, any recovery after trial would, in fact, have been diminished by both parties' expenditures in preparation for and at trial. This obviously represents a strong recovery for the FTC, and the parties' assurances that the settlement was the result of vigorous arms-length negotiation, by counsel, over a matter of months, ameliorate potential concerns that the settlement is unfair to Defendants.[4] The parties have also adequately addressed the Court's concerns with approving the Order prior to a determination of Defendants' request for attorney's fees and expenses. Defendants' request for a total of $256,215.97 does

---

[3]   The FTC's representations in this respect are based on sworn statements by the Defendants.

[4]   The Second Circuit's decision in <u>Citigroup</u> expressed skepticism that it is within a court's discretion to refuse to allow "a private, sophisticated, counseled" defendant from entering into a voluntary settlement, in which it is permitted to avoid admitting liability, on the basis that the settlement was unfair to the defendant. <u>Citigroup</u> 673 F.3d at 165 (2d Cir. 2012). This Court need not resolve this issue because it can find no evidence, on the facts before it, of the sort of potential unfairness to the Defendants that would require the Court to consider rejecting the settlement on this basis.

not appear to threaten to compromise the fairness, adequacy, and reasonableness of a $2.89 million recovery, a significant concern the Court had.  Given the foregoing, this Court can conclude that the settlement is a fair, adequate, and reasonable resolution of the dispute between the parties.

> 2.   Whether The Order Is In The Public Interest

The supplemental briefing, however, has not demonstrated that the settlement is in the public interest notwithstanding Defendants' failure to admit to liability.[5]  This Court will require supplemental briefing from the FTC on whether it may consider the FTC's failure to obtain an admission of liability in its public interest analysis and, if so, why the Stipulated Order is in the public interest.

To begin with, this Court is uncertain whether it may even consider the FTC's failure to obtain an admission of liability in its public interest analysis.  The FTC argued in its papers that courts have rejected the argument that a consent decree must require either admission or proof of wrongdoing.  [Docket No. 42 at 3-4].  Its cited authority, however, dealt solely with whether a court had jurisdiction to enter a consent decree

---

[5]   The District Court in Citigroup held that the "fairness, adequacy, and reasonableness" prong was not "meaningfully severable" from the "public interest" prong.  2011 WL 5903733, at *3.  In this Court's view, although the two prongs may overlap at times, the former refers only to the fairness, adequacy, and reasonableness of the settlement as between the parties, while the latter contemplates broader consideration of the agreement's affect on non-parties (i.e. the public).

without such admissions or proof, not with whether its entry was in the public interest.  [Docket No. 42 at 4 (citing to <u>Swift & Co. v. United States</u>, 276 U.S. 311 (1928) and <u>Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights</u>, 616 F.2d 1006, 1015 (7th Cir. 1980))].

The FTC has also submitted authority that the Court may assess whether the Order's "substantive components serve the policies of the allegedly . . . violated statutes and the public interest."  [Docket No. 42 at 4 (citing to <u>United States v. Atofina Chems., Inc.</u>, No. 01-7087, 2002 WL 1832825, at *5 (E.D. Pa. Aug. 5, 2002)].[6]  This suggests that, in the FTC's view, the Court may broadly consider whether a consent decree is in the public interest, including whether the decree includes an admission of liability.  That view, however, appears to be at odds with the Second Circuit's decision in <u>Citigroup</u>, which suggested that the scope of the public interest review may be limited to whether the specific injunctive provisions of the

---

[6]     The FTC also indicated that the Court's role "is 'not to determine whether the resulting array of rights and liabilities is the one that will best serve society, but only to confirm that the resulting settlement is within the reaches of the public interest.'"  [Docket No. 42 at 5 (citing to <u>United States v. Microsoft Corp.</u>, 56 F.3d 1448, 1460 (D.C.Cir. 1995)].  That holding was, however, premised on courts' interpretation of the appropriate standard of review of an antitrust settlement under the Tunney Act and the authority for that proposition stemmed from a decision specifically interpreting that Act.  <u>Microsoft</u>, 56 F.3d at 1459-60 (tracing support for that proposition to <u>United States v. Gillette Co.</u>, 406 F. Supp. 713 (D. Mass. 1975), a case specifically interpreting the Tunney Act). Its applicability to this case is therefore unclear.

settlement would harm the public interest.  Citigroup, 673 F.3d
at 163 n. 1 (2d Cir. 2012)(citing to cases in the context of a
discrete request for injunctive relief and not in the consent
decree context).

There does appear, however, to be good grounds for the
FTC's view, given: (1) the broad and flexible nature of the
Court's equitable powers; (2) the important public interest at
stake; and (3) the fact that the Court is placing its imprimatur
and enforcement power behind the decree.  Holmberg v. Armbrecht,
327 U.S. 392, 396 (1946)("Equity eschews mechanical rules; it
depends on flexibility."); Park 'N Fly, Inc. v. Dollar Park and
Fly, Inc., 469 U.S. 189, 217 (1985)("[T]he essence of equity
jurisdiction has been the power of the Chancellor to do equity,
particularly when an important public interest is
involved.")(Stevens, J., dissenting)(quotation and citation
omitted); United States v. Colorado, 937 F.2d 505, 509 (10th Cir.
1991)("Because the issuance of a consent decree places the power
of the court behind the compromise struck by the parties, the
district court must ensure that the agreement is not illegal, a
product of collusion, or against the public interest."); League
of United Latin Am. Citizens, Council No. 4434 v. Clements, 999
F.2d 831, 846 (5th Cir. 1993)(*en banc*)(cert. denied 510 U.S.
1071 (1994))("Because the consent decree does not merely
validate a compromise but, by virtue of its injunctive

14

provisions, reaches into the future and has continuing effect,
its terms require more careful scrutiny . . . . If the decree
also affects third parties, the court must be satisfied that the
effect on them is neither unreasonable nor proscribed."); United
States v. Oregon, 913 F.2d 576, 581 (9th Cir. 1990)(holding that
the court had recognized "a heightened responsibility" to
protect the public interest when a consent decree affects the
public interest or third parties)(cert. denied sub nom. Makah
Indian tribe v. United States, 501 U.S. 1250 (1991)); Janus
Films, Inc. v. Miller, 801 F.2d 578, 582 (2d Cir. 1986)("The
court has a larger role, however, where a consent judgment or a
settlement judgment resolves . . . any suits affecting the
public interest.  In such cases, the court must be satisfied of
the fairness of the settlement.")(quotation and citations
omitted); Citizens for a Better Env't v. Gorsuch, 718 F.2d 1117,
1126 (D.C. Cir. 1983)(cert. denied sub nom. Union Carbide Corp.
v. Natural Res. Def. Council, Inc., 467 U.S. 1219 (1984))("As we
have previously held, prior to approving a consent decree a
court must satisfy itself of the settlement's overall fairness
to beneficiaries and consistency with the public
interest.")(emphasis added)(quotations and citations omitted);
United States v. Michigan, 116 F.R.D. 655, 663 (W.D. Mich.
1987)("In a public interest consent decree situation, a
court . . . must ensure that the decree, which bears its

imprimatur, is implemented in a manner consistent with the public interest and with the rights of those affected by its provisions.")(citation omitted).  The FTC should address the proper scope of this Court's public interest review in light of the Citigroup decision.

This Court recognizes that, even if it may consider the FTC's failure to obtain an admission of liability in its public interest analysis, it must afford substantial deference to the FTC's views. Citigroup, 673 F.3d at 163, 164, 168 (2d Cir. 2012). This deference does not mean, however, that this Court must accept conclusory arguments regarding the public interest.  Id. at 168 ("However, this does not mean that courts must necessarily rubber stamp all arguments made by such an agency.")(quotation omitted).  It is instead entitled to the FTC's reasoning and the facts supporting that reasoning.  See id. at 164-65 (concluding that the District Court had failed to give appropriate deference to the SEC's decision, since there was "no basis to doubt the SEC's decision was made in consideration of" the appropriate factors, not that it was improper for the District Court to make inquiries into the basis for the decision).  The Court is also cognizant that it may not dictate the FTC's policy choices.  Id. at 163.  But neither can this Court abdicate its own responsibility to conduct meaningful

judicial review.  Some tension between these directives is unavoidable.

In this respect, the Second Circuit's opinion in Citibank alludes to courts concluding "that an agency's assessment of policy factors driving a decision to settle is an agency action committed . . . to agency discretion by law and therefore not subject to any judicial review".  Id. at 164 (quotations omitted).  Importantly, however, the Second Circuit wrote that it was "not certain [it] would go so far as to hold that under no circumstances may courts review an agency decision to settle". Id. at 164.  This Court also notes that there is an important procedural difference between the cases cited by the Second Circuit and the circumstance here.  The holdings in the cases cited by the Second Circuit were in the context of outside parties seeking to intervene in out-of-court settlements by government agencies, not in a court's direct review of a proposed consent decree.  Id. (citing to Ass'n of Irritated Residents v. E.P.A., 494 F.3d 1027, 1028 (D.C. Cir. 2007)(rejecting right of community and environmental groups to petition for review of non-court ordered E.P.A. agreements); N.Y. State Dep't of Law v. F.C.C., 984 F.2d 1209, 1210-11 (D.C.Cir. 1993)(rejecting right of certain petitioners to seek review of non-court ordered settlement of FCC action)).

The FTC's response addressed this issue only briefly.  It indicated that an admission in this case would be of limited public benefit because violations of the Federal Trade Commission Act have no private right of action and, if the alleged wrongdoing were actionable, the Defendants are highly unlikely, due to the FTC's own recovery under the Order, to be able to pay any award.  In this Court's view, however, the FTC's response overlooks the critical interest of the public, on an important matter of public concern, in the truth concerning Defendants' alleged deceptive conduct.  Citigroup, 2011 WL 5903733, at *4 (noting that in settlements without admission of liability, the "public is deprived of ever knowing the truth in a matter of obvious public importance.").  The FTC's own pleadings, which allege extensive deceptive conduct and significant consumer loss, support the significant public interest in knowing the truth.  The FTC's Complaint alleges that: (1) the Defendants had marketed acai-berry-based weight-loss products, as of the filing of the Complaint on April 18, 2011, since at least August 2009; (2) the Defendants marketed the product through the use of "fake" news reports on websites and "comments" and "responses" to those reports that purport to be from ordinary consumers, but are, in fact, additional advertising content; and (3) the Defendants made deceptive claims about the ability of the products to stimulate weight

loss.  [Docket No. 1, Compl. ¶¶ 9, 11, 12, 15, 16].  Furthermore, the FTC's acknowledgment that the $11 million earned by Defendants is only a "small fraction" of the total consumer loss also supports the public's interest in the truth.

In concluding that these are significant interests that the FTC's response ignores, this Court does <u>not</u> assume that the Defendants engaged in the deceptive conduct alleged or that the FTC would necessarily prevail at trial. See <u>Citigroup</u>, 673 F.3d at 163 (2d Cir. 2012)(criticizing the District Court in <u>Citigroup</u> for, in the Circuit's view, "prejudg[ing] the fact that Citigroup had in fact misled investors, and assum[ing] that the SEC would succeed at trial in proving Citigroup's liability.").  This Court merely recognizes that settlement without an admission of liability forecloses a determination of the truth of the FTC's allegations and leaves the public with no better appreciation of the truth of the matter than when the litigation began.

Accordingly, because the FTC did not address this issue fully, it should address the concerns raised above in supplemental briefing.  It should also address whether there are any other efforts the FTC can make, short of requiring an admission of liability, to address the Court's articulated concerns.

III. <u>Conclusion</u>

For all these reasons, the FTC shall address the issues identified by the Court, and any other issues it wishes the Court to consider, by written submission on or before July 9, 2012.

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: <u>June 13, 2012</u>