IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CIRCA DIRECT LLC, ANDREW DAVIDSON,<br><br>　　　　　Defendants. | Civil No. 11-2172 RMB/AMD<br><br>**OPINION AND ORDER** |

　　　　On February 10, 2012, Plaintiff Federal Trade Commission (the "FTC") and Defendants Circa Direct LLC and Andrew Davidson (the "Defendants") requested that this Court approve a Stipulated Final Order for Permanent Injunction and Other Equitable Relief (the "Stipulated Order")[Docket No. 37] settling the FTC's claims against the Defendants.  This Court twice required further briefing from the parties on the propriety of approving the Stipulated Order.  [Docket Nos. 36, 50].  For the reasons that follow, this Court will approve the Stipulated Order, subject to certain conditions described below.

I.　Background

　　　A.　The Stipulated Order

1

The FTC alleges that Defendants engaged in deceptive acts or practices in the marketing of acai berry-based products. [Docket No. 1, Complaint]. Specifically, the FTC claims that the Defendants marketed the products, through the internet, as promoting rapid and substantial weight loss, when those claims were unsupported and false. Id. The Stipulated Order provides for both a monetary judgment of $11,500,000, to be suspended subject to certain conditions, and a permanent injunction against the Defendants. (Stipulated Order at 16-17.) The Order further provides that its entry "is in the public interest." (Stipulated Order at 3.) Despite the FTC's allegations that Defendants violated the Federal Trade Commission Act by engaging in deceptive acts or practices, the Order contains no admission by the Defendants of any wrongdoing. Rather, Defendants accept the terms of the Order "without admitting the allegations [of wrongdoing] set forth in" the Complaint and "without any admission or finding of liability." (Stipulated Order at 2-3.)

B.   The Court's First Order

Upon receipt of the Stipulated Order, this Court ordered supplemental briefing to address the import of the recently decided SEC v. Citigroup Global Markets, Inc. decision to the case. Citigroup, No. 11 Civ. 7387, 2011 WL 5903733 (S.D.N.Y. Nov. 28, 2011). The Citigroup court held that it could not approve the settlement of a Securities and Exchange Commission

2

(the "SEC") enforcement action where, like here, the settlement (the "SEC Settlement") awarded monetary damages and imposed injunctive relief, but permitted the defendant to settle without admitting to any of the allegations lodged against it. Id. at *4. The court reasoned that it was required, before approving the SEC Settlement, to ensure that the SEC Settlement was fair, adequate, reasonable, and in the public interest. Id. at *3. It also acknowledged the "substantial deference" afforded to the views of administrative bodies, like the SEC, in their areas of authority. Id. However, the court concluded, notwithstanding this deference, that without any admission by the defendant, it lacked the factual predicate necessary to find that the proposed settlement was fair, adequate, reasonable, and in the public interest. Id. at *4. This Court noted in its supplemental briefing order that similar concerns were present here, given the lack of an admission of liability by Defendants. Federal Trade Comm'n v. Circa Direct LLC, No. 11-2172, 2012 WL 589560, at *2 (D.N.J. Feb. 22, 2012). The Court directed that the parties address, among other things:

> (1) whether the Order should be subject to the same standard of review before approval, as found in Citigroup, that is, is the settlement fair, adequate, reasonable, and in the public interest; and
> 
> (2) assuming that the Order is subject to the same standard as held in Citigroup, is the Order fair, adequate, reasonable, and in the public interest, in

light of the concerns articulated by this Court and by the court in Citigroup.

C. Responses to the Court's Order From The Parties And FTC Commissioner Rosch

The parties timely responded to the Court's order. The parties agreed that the Citigroup factors applied, but argued that the lack of an admission of liability was not relevant to this Court's review. In response to the FTC's briefing, this Court also received a letter submission from FTC Commissioner J. Thomas Rosch. [Docket No. 49]. In the letter, Commissioner Rosch wrote that, in his view, the FTC's submission "suffers from two failings." First, the FTC's submission failed to mention the text of Section 13(b) of the FTC Act, which Commissioner Rosch asserts requires this Court to consider both the FTC's likelihood of success in litigation and the public interest before approving a settlement - both of which are implicated by a lack of an admission by the Defendants. Second, Commissioner Rosch questioned the notion that this Court "should simply 'rubber-stamp' an agency decision."

D. The Second Circuit's Decision

Following the parties' briefing, but prior to Commissioner Rosch's letter, on March 15, 2012, the Second Circuit issued an opinion on a request for a stay by the parties to the Citigroup action. SEC v. Citigroup Global Markets, Inc., 673 F.3d 158 (2d Cir. 2012). The Circuit Court granted the parties' application

4

for a stay finding that the parties had demonstrated all the factors necessary for a stay, including a likelihood of success on the merits of its claim that the District Court had improperly rejected the settlement at issue there. Id. at 160-61.

    E.   <u>The Court's Second Order</u>

In response to the parties' briefing, Commissioner Rosch's letter, and the Second Circuit's decision, this Court issued a second Order. <u>F.T.C. v. Circa Direct</u> LLC, No. 11-2172, 2012 WL 2178705 (D.N.J. June 13, 2012). The Order:

(1) required further briefing from the FTC on whether Section 13(b) was applicable to the Court's analysis, as suggested by Commissioner Rosch;

(2) found that, if 13(b) was not applicable or merely supplemented the <u>Citigroup</u> analysis, the parties' submissions provided sufficient context for the Court to conclude that the Stipulated Order was fair, adequate, and reasonable;

(3) required further briefing from the FTC on whether the Court could consider the lack of an admission of liability in its public interest analysis and, if it could, how the Stipulated Order was in the public interest, considering that the Stipulated Order did not advance the strong public interest in the public understanding the truth of the matter; and

(4) required further briefing from the FTC on "whether there are any efforts the FTC can make, short of requiring an admission of liability, to address the Court's articulated concerns." Id. at *4-7.

    F.   <u>The FTC'S Response To The Court's Second Order</u>

5

The FTC timely responded [Docket No. 51] to the Court's Second Order. In its submission, the FTC indicated that: (1) Section 13(b) is inapplicable to this Court's analysis; (2) it was unnecessary to answer the question of whether a Court could consider a lack of an admission of liability in its public interest analysis because, even if it could be considered, the entry of the Stipulated Order was in the public interest; and (3) it was "not sure" how to address the Court's directive that it detail "any efforts, short of requiring an admission of liability" that would address the public's interest in ascertaining the truth of the FTC's allegations.

With respect to the last point, the FTC argued that "[e]ven a trial on the merits would not likely reveal 'the truth'; it would simply determine whether [the FTC] sustained its burden of proof." It also noted that the Court could rely on materials submitted in connection with the FTC's earlier motion for a preliminary injunction in considering whether to approve the Stipulated Order. Those materials included a declaration from a Ph.D. nutritionist explaining that Defendants' claims of rapid and substantial weight loss through use of the marketed products lacked any support in scientific literature, was not scientifically plausible, and was false. [Docket No. 3, Ex. 1]. They also included declarations from FTC investigators detailing their investigation of Defendants and linking the Defendants to

6

the allegedly false marketing materials. [Docket No. 3, Exs. 3-9].

II. Analysis

The FTC's submission leaves this Court with three issues to address: (1) whether Section 13(b) is applicable to its analysis; (2) whether it can consider the lack of an admission of liability in its public interest analysis; and (3) if it can, whether to approve the Stipulated Order notwithstanding the lack of an admission of liability by Defendants. The Court addresses each issue in turn.

A. The Applicability Of Section 13(b)

This Court agrees with the FTC that Section 13(b) does not apply to its review of the Stipulated Order. In the consent decree context, the source of the court's authority to award relief is the agreement of the parties, not the complaint upon which the action was originally based, and a court may even order broader relief than could have been awarded after a trial on the merits. See City of El Paso, Tex. V. El Paso Entertainment, Inc., No. 11-504550, 2012 WL 874675, at *8 (5th Cir. Mar. 5, 2012)(recognizing that it is the agreement of the parties, rather than the force of law on which the complaint was originally based, that creates the obligations embodied in a consent decree)(citing to Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland, 478 U.S. 501,

7

525 (1986)(holding that a federal court could enter a consent decree containing <u>broader</u> relief than the court could have awarded after a trial)); <u>People Who Care v. Rockford Bd. of Educ. School Dist. No. 205</u>, 961 F.2d 1335, 1337 (7th Cir. 1992)("True, when the imprimatur of the injunction joins the parties' agreement, the result is more than a contract, but the source of authority to require the parties to act remains their acquiescence rather than rules of law."); <u>Harris v. Pernsley</u>, 820 F.2d 592, 603 (3d Cir. 1987)("The source of the district court's authority to enter a consent decree is the parties' agreement."). Because this Court may rely on the parties' consent to award relief and not Section 13(b), it is not bound, and therefore need not consider, Section 13(b)'s requirements.

> B.  Whether This Court May Consider The Lack Of An Admission of Liability In Its Public Interest Analysis

Having concluded that this Court is not bound by Section 13(b), the Court next addresses whether it may consider the lack of an admission of liability in its public interest analysis.[1] The Court concludes that it can for three reasons.

---

[1]  Recognizing both the importance of this issue, and that the case law on it was undeveloped, this Court previously directed the FTC to address this issue in its supplemental briefing. <u>Circa Direct</u>, 2012 WL 2178705, at *5 ("This Court will require supplemental briefing from the FTC on whether it may consider the FTC's failure to obtain an admission of liability in its public interest analysis . . . ."). But, as alluded to above, despite this <u>explicit</u> instruction, the FTC declined to engage in this inquiry. [Docket No. 51, p. 6]("It is not necessary to reach the question of whether a court could ever consider the lack of admissions as part of an overall public interest analysis . . . ."). The FTC's failure to address this issue, despite the Court's

First, allowing for court review of this provision is consistent with the broad and flexible consideration normally afforded the court in exercising its equitable powers, as it is being asked to do here through the FTC's request for injunctive relief. Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982)(recognizing that an injunction is "an equitable remedy"); Holmberg v. Armbrecht, 327 U.S. 392, 396 (1946)("Equity eschews mechanical rules; it depends on flexibility."); Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 217 (1985)("[T]he essence of equity jurisdiction has been the power of the Chancellor to do equity, particularly when an important public interest is involved.")(Stevens, J., dissenting)(quotation and citation omitted). It would be incongruous to require the Court to exercise its broad equitable powers but prohibit it from assessing the broader equities of the settlement, including the lack of an admission of liability.

---

instruction to do so, is troubling and, unfortunately, was part of a larger pattern of FTC recalcitrance. As discussed above, and in more detail below, the FTC also failed to offer suggestions as to any efforts the FTC could make to address the Court's articulated concerns, short of requiring an admission of liability, as the Court directed. Id. at *7 ("[The FTC] should also address whether there are any other efforts the FTC can make, short of requiring an admission of liability, to address the Court's articulated concerns."); [Docket No. 51, p. 6 ("The Commission is not sure how to address this concern.")]. These requests were part of the Court's attempt to replace the adversarial briefing process, which ordinarily fleshes out these issues, but which is unavailable here for obvious reasons, with its own dialogue with the parties. That dialogue was not as productive as this Court had hoped because of the FTC's failure to follow this Court's instructions.

Second, consideration of this provision is appropriate because it implicates a significant public interest and the Court has a special duty to give careful scrutiny to a consent decree's effect on the broader public. League of United Latin Am. Citizens, Council No. 4434 v. Clements, 999 F.2d 831, 846 (5th Cir. 1993)(*en banc*)(cert. denied 510 U.S. 1071 (1994))("Because the consent decree does not merely validate a compromise but, by virtue of its injunctive provisions, reaches into the future and has continuing effect, its terms require more careful scrutiny . . . . If the decree also affects third parties, the court must be satisfied that the effect on them is neither unreasonable nor proscribed."); United States v. Oregon, 913 F.2d 576, 581 (9th Cir. 1990)(holding that the court had recognized "a heightened responsibility" to protect the public interest when a consent decree affects the public interest or third parties)(cert. denied sub nom. Makah Indian tribe v. United States, 501 U.S. 1250 (1991)); Janus Films, Inc. v. Miller, 801 F.2d 578, 582 (2d Cir. 1986)("The court has a larger role, however, where a consent judgment or a settlement judgment resolves . . . any suits affecting the public interest.")(quotation and citations omitted); Citizens for a Better Env't v. Gorsuch, 718 F.2d 1117, 1126 (D.C. Cir. 1983)(cert. denied sub nom. Union Carbide Corp. v. Natural Res. Def. Council, Inc., 467 U.S. 1219 (1984))("As we have previously

held, prior to approving a consent decree a court must satisfy itself of the settlement's <u>overall</u> fairness to beneficiaries and consistency with the public interest.")(emphasis added)(quotations and citations omitted).

Third, review of this provision is appropriate because this Court is placing its imprimatur on the Stipulated Order. Courts have grounded their authority to review consent decrees' consistency with the public interest in the fact that they are placing their imprimatur on the decree. <u>United States v. Colorado</u>, 937 F.2d 505, 509 (10th Cir. 1991)("Because the issuance of a consent decree places the power of the court behind the compromise struck by the parties, the district court must ensure that the agreement is not illegal, a product of collusion, or against the public interest."); <u>WildEarth Guardians v. Jackson</u>, No. 11-743, 2011 WL 4485964, at *4 (D. Col. Sep. 27, 2011)("Because a consent decree bears the imprimatur of judicial approval, a district court 'must ensure that the agreement is not illegal, a product of collusion, or against the public interest.'"); <u>United States v. Michigan</u>, 116 F.R.D. 655, 663 (W.D. Mich. 1987)("In a public interest consent decree situation, a court . . . must ensure that the decree, which bears its imprimatur, is implemented in a manner consistent with the public interest and with the rights of those affected by its provisions.")(citation omitted). By reviewing decrees for their

11

consistency with the public interest, courts ensure that they do not lend their prestige to decrees that disserve the public interest and thereby afford false stature to the decree and risk damage to the court's own reputation.  Because the Court's approval of the Stipulated Order signals its approval of the Stipulated Order as a whole, it naturally follows that it must retain the ability to review all terms that comprise the settlement for consistency with the public interest, including its lack of an admission of liability.

    C.    Whether This Court Will Approve The Stipulated Order Notwithstanding The Lack Of An Admission Of Liability

Having determined that it may consider the Stipulated Order's failure to include an admission of liability, this Court next considers whether it should approve the Stipulated Order notwithstanding that failure.  This Court previously signaled its reticence to approve the Stipulated Order without an admission of liability.  Circa Direct, 2012 WL 2178705, at *6. That hesitancy was premised on the fact that settlement without an admission of liability would deprive the public, on an important matter of public concern, of an adjudication of the truth of the FTC's allegations.  Id.  The FTC's latest submission does little to allay that concern.  Critically, the FTC does not dispute the public interest in the truth of the

matter. It instead makes three other arguments in favor of approval.

First, the FTC argues that the Stipulated Order should be approved because, according to the FTC, it vindicates the most important interests at stake – monetary relief and injunctive relief against future violations - whereas the interest identified by the Court – the truth - is peripheral. [Docket No. 51 at p. 5-6 (describing the Order as serving "the public interest in the most important way possible" by prohibiting future false claims and affording "significant monetary relief" while describing the Court's interest in the truth as "ancillary")]. While this Court has acknowledged that the monetary relief here is significant (<u>Circa Direct</u>, 2012 WL 2178705, at *4), the FTC may be ascribing undue weight to the injunctive relief component. That component instead is largely limited to prohibiting Defendants from future conduct that the FTC Act <u>already</u> prohibits. And, in any event, the FTC is far too dismissive of the value of the truth to the public. In this Court's view, the public's interest in the truth is of at <u>least</u> equal importance to monetary and injunctive relief in assessing a settlement of alleged deceptive conduct, given that the FTC is charged with preventing deception. 15 U.S.C. § 45(a)(2)(directing FTC to "prevent . . . deceptive acts or practices in or affecting commerce.").

Second, the FTC argues that the settlement should be approved because the Court's identified interest is not one that would be any better addressed through continued litigation. The FTC argues that even a trial would not advance this interest because "[a trial] would not likely reveal 'the truth'; [a trial] would simply determine whether [the FTC] sustained its burden of proof." It is disheartening that the FTC, no stranger to our courts, would take such a demeaning view of them. And it is disconcerting that the FTC could be so wrong about them. In the real, practical world in which this Court operates, the adversarial trial process is the best tool our society has devised to ascertain the truth.[2] That process deserves respect.

---

[2] See Arizona v. Fulminante, 499 U.S. 279, 295 (1991)(describing the trial as having a truth-seeking function); Darden v. Wainwright, 477 U.S. 168, 194 (1986)("The solemn purpose of endeavoring to ascertain the truth ... is the *sine qua non* of a fair trial.")(quotation and citation omitted); United States v. Hunt, 896 F.2d 1288, 1296 (11th Cir. 1990)("The purpose of a trial is to ferret out the truth."); Torgerson v. City of Rochester, 643 F.3d 1031, 1055 (8th Cir. 2011)(describing the burden on summary judgment as showing whether "genuine issues of material fact remain that are worthy of the truth-finding machinery of a civil trial by jury."); Unied States v. Nacchio, 555 F.3d 1234, 1280 (10th Cir. 2009)("[T]he purpose of trial is to ascertain the truth."); Jones v. Lincoln Elec. Co., 188 F.3d 709, 737 (7th Cir. 1999)(describing "the essential function of a trial" as "truth-finding"); Lough v. Brunswick Corp., 103 F.3d 1517, 1519 (Fed. Cir. 1997)(" The trial process is the mechanism, in our system of justice, for finding facts, determining credibility, weighing the evidence, balancing the circumstances, and ascertaining the truth."); Johnston v. Harris Cty. Flood Control Dist., 869 F.2d 1565, 1578 (5th Cir. 1989)(" The goal of grand jury proceedings, of criminal trials, and of civil trials is to resolve a dispute by gathering the facts and arriving at the truth."); United States v. Luisi, 568 F. Supp. 2d 106, 118 (D. Mass. 2008)(recognizing that "[t]he best way yet devised to determine the facts and therefore the truth is in a trial before a jury.")(quoting Judge Royal Ferguson).

Finally, the FTC argues that the settlement should be approved without an admission of liability because holding otherwise would inappropriately insert this Court into an FTC policy decision to settle, when it has good reason to settle here. Id. at 6-7. The FTC contends that taking the matter to trial would result in significant expenditure in time and resources for the FTC and further depletion of Defendants' resources and, with it, any recovery. Implicit in the FTC's argument is the assumption that requiring an admission of liability from Defendants to settle is tantamount to requiring the FTC to pursue the case to trial.

There appear to be good grounds for the FTC's assumption and its contention as to the efficacy of a trial. Citigroup, 673 F.3d at 165 (2d Cir. 2012) ("Finally, we question the district court's apparent view that the public interest is disserved by an agency settlement that does not require the defendant's admission of liability. Requiring such an admission would in most cases undermine any chance for compromise."); Circa Direct, 2012 WL 2178705, at *4 (recognizing that "the FTC could not have obtained a better monetary recovery if it had prevailed at trial."). Because the FTC's contentions are reasonable, and this Court must afford the FTC's discretionary decisions substantial deference, this Court will not require an admission of liability before approving the settlement.

Citigroup, 673 F.3d at 163, 168 (recognizing that an agency's decisions are entitled to substantial deference).

That does not end the inquiry, however. While this Court will not require that the settlement include an admission of liability, it will not approve the settlement in its current form. The settlement, as structured, is not in the public interest because it fails to meaningfully serve the important interest in the truth identified above.[3] Anticipating the possibility, now realized, that the Court would not require an admission of liability, but still find the settlement unsatisfactory, this Court previously directed the FTC to identify any alternatives, short of requiring an admission of liability, to address the Court's concern. Circa Direct, 2012 WL 2178705, at *7 ("[The FTC] should also address whether there are any other efforts the FTC can make, short of requiring an admission of liability, to address the Court's articulated concerns."). As discussed above, despite this plain instruction, and the Court's obvious desire to constructively engage with the

---

[3] The FTC suggested in a recent opinion that, going forward, settlements with express denials would be "strongly disfavored" and that it would consider whether "language that the respondent 'neither admits nor denies' a complaint's allegations" is more appropriate. http://ftc.gov/os/caselist/0923184/120810facebookstmtcomm.pdf. This type of language change would not alter the result here. Where a defendant settles without admitting to liability, the specific language utilized to facilitate settlement is an exercise in semantics. It does not address the Court's core concern that the public have some mechanism to evaluate the truth of the FTC's claims.

16

FTC, the FTC responded that it was "not sure" what the Court was proposing.

Without guidance from the FTC, this Court must craft its own proposal to address the public interest in the truth. Ordinarily, as alluded to above, that interest is vindicated through the adversarial process of a trial. Gardner v. Florida, 430 U.S. 349, 360 (1977)("[D]ebate between adversaries is often essential to the truth-seeking function of trials . . . ."); Howard v. Walker, 406 F.3d 114, 128 (2d Cir. 2005)("Trials are by their nature adversarial processes, and it is this adversarial nature that ensures the fulfillment of their truthfinding function."). Here, however, in the consent decree context, this Court cannot turn to the adversarial process to address this interest. Therefore, this Court will instead condition its approval of the Stipulated Order on the FTC taking certain steps to inform the public and allow it to assess the truth of the FTC's claims. In this way, though the FTC's allegations will not be tried in a court of law, they will at least be put before the public for evaluation and discussion. Though the actions outlined below may create a one-sided factual presentation, and are by no means a substitute for the trial's truth-seeking function, they will sufficiently address the

17

public interest concern identified by the Court for the Court to approve settlement.[4]

The FTC shall create and host a webpage discussing the settlement on the ftc.gov webspace.[5]  The webpage shall:

(1) contain the following notice at, or near, the top of the webpage: "Notice from the United States District Court for the District of New Jersey:  The United States District Court for the District of New Jersey has approved a settlement between the Federal Trade Commission ("the FTC") and Defendants Circa Direct LLC and Andrew Davidson (the "Defendants").  The FTC had alleged that the Defendants falsely marketed certain acai-berry based products as promoting rapid and substantial weight loss when, in fact, they do not.  While the Defendants do not admit to these allegations, they have submitted no evidence to this Court to the contrary.  Below you may find a summary of the evidence that the FTC contends supports its allegations."; and

(2) then contain (i) a detailed written summary of the allegations contained in the complaint, including a list of the products implicated in the alleged deceptive marketing, and a link to the complaint, (ii) a detailed written summary of the documentary evidence supporting the FTC's allegations of Defendants' involvement in the alleged deceptive marketing and

---

[4] While the FTC argued in its brief that it had already submitted "considerable evidence" to this Court in connection with its application for a preliminary injunction, the FTC's prior submissions are inadequate because: (1) they are not written in plain language and in an easily digestible format; and (2) they are not meaningfully available to the public.

[5] This Court also considered whether it had the authority to, and would require, that the FTC dedicate a portion of the proceeds of the settlement to promote public awareness of the settlement.  The FTC could do so by utilizing the same internet marketing tools the Defendants utilized to reach the public at the start, or through other means. However, because this Court concludes that the Stipulated Order, as modified, is in the public interest, such a requirement is unnecessary and the Court need not address its authority to impose it. However, this could <u>potentially</u> be an appropriate consideration in evaluating future settlements.

>
> links to supporting documentary evidence, and (iii) a detailed written summary of the science that led the FTC to conclude that Defendants' claims were scientifically implausible and a link to the declaration of the FTC's PhD nutritionist.[6]

III. Conclusion

For all these reasons, the parties shall have until October 12, 2012 to comply with the Court's conditional approval, as set forth above. Upon the Court's receipt of materials demonstrating compliance with this Order, the Court will enter an order approving the settlement.

>                           s/Renée Marie Bumb
>                           RENÉE MARIE BUMB
>                           UNITED STATES DISTRICT JUDGE

Dated: September 11, 2012

---

[6] If the FTC believes this information would be better presented, or more accessible to the public, through a video presentation, it may instead utilize a video presentation to present this information, while providing links to supporting materials below the video. The FTC may also utilize both a written and video presentation of this information, if it chooses. In that case, the video presentation may be a further condensed version of the written presentation.