[Docket No. 40]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

FEDERAL TRADE COMMISSION,

                Plaintiff,

    v.

CIRCA DIRECT LLC, ANDREW
DAVIDSON,

                Defendants.

Civil No. 11-2172 RMB/AMD

**OPINION AND ORDER**

Appearances:

Laura M. Sullivan
Elizabeth Tucci
James A. Prunty
Federal Trade Commission
600 Pennsylvania Avenue, N.W., Mail Drop NJ-3212
Washington, D.C. 20580
- Attorneys for Plaintiff -

Edwin M. Larkin
Kristine A. Sova
Venable LLP
1270 Avenue of the Americas, 25th Floor
New York, New York 10020
- Attorneys for Defendants -

BUMB, United States District Judge:

     On March 8, 2012, Defendants Circa Direct LLC and Andrew

Davidson (the "Defendants") moved that they be awarded

attorney's fees and expenses. [Docket No. 40]. For the reasons

that follow, that motion is GRANTED, in part, and DENIED, in part.

I.  Background

    A.  The Preliminary Injunction

On April 18, 2011, Plaintiff Federal Trade Commission (the "FTC") filed a Complaint against the Defendants, alleging that the Defendants had engaged in certain deceptive practices.  [Dkt. No. 1].  Defendants retained attorneys from the New York office of Venable LLP ("Venable") to represent them in connection with the litigation and furnished Venable with a $150,000 retainer. On April 19, 2011, Plaintiff and Defendants negotiated a Stipulated Temporary Restraining Order.  [Docket No. 5].  The parties then agreed to a Stipulated Preliminary Injunction Order on May 20, 2011.  [Docket No. 17].  That Order includes an asset preservation provision restraining the ability of Defendants to utilize their assets other than for actual, ordinary, and necessary living and business expenses they reasonably incur, with those expenses limited to $5,500 plus an additional $5,000 to undertake new business activities for the first thirty days after the Order, and $4,500 a month thereafter, subject to the consent of the FTC, or approval of the Court.  Stipulated Preliminary Injunction Order § IV (A)-(B).

    B.  The Stipulated Order

On February 10, 2012, the FTC agreed to a Stipulated Final
Judgment and Order (the "Stipulated Order") with the Defendants,
settling the FTC's claims without admitting to liability.
[Docket No. 37].  After briefing on the propriety of the
Stipulated Order [Docket Nos. 36, 42, 43, 44, 49, 50, 51, 52, 54]
this Court approved the Stipulated Order on October 17, 2012.
[Docket No. 55].  The Stipulated Order calls for the turnover of
substantially all of Defendants' assets to the FTC.  Stipulated
Order § 7(B) ¶ 4.  However, the Stipulated Order also authorizes
the release of frozen funds "to pay attorneys' fees and costs
reasonably incurred by" counsel, contingent on either the
consent of the FTC or the approval of the Court pursuant to a
motion. Stipulated Order § 7(B) ¶ 4

    C.   Defendants' Fee and Expense Request

In litigating this matter, Venable exhausted its initial
$150,000 retainer and incurred significant additional fees and
expenses.  [Docket No. 40, Declaration of Edwin M. Larkin
("Larkin Dec.") ¶¶ 2, 7]. Because the FTC would not agrees to
release funds to meet these fees and expenses, Defendants have
now moved, pursuant to the Stipulated Order, for the release of
frozen funds to pay their fees and expenses.  [Docket No. 40].
Defendants claim to have incurred a total of $400,076.50 in
legal fees and $6,139.47 in expenses.  [Larkin Dec. ¶ 2].
Because Defendants already furnished Venable with a $150,000

retainer, Defendants seek the release of an additional $250,076.50 in fees, based on Venable's hourly billing rates and hours worked on the matter, and $6,139.47 in expenses. [Larkin Dec. ¶¶ 2, 7].

    1.   <u>Defendants' Requested Hours and Rates</u>

In connection with the fee request, Defendants submitted an exhibit listing all of the professionals who worked on this matter with their role, a proposed billing rate, and hours billed for each invoice. [Docket No. 40, Ex. I]. The Defendants also submitted individual invoices with records of each timekeeper's billing entries. [Docket No. 40, Exs. J-S]. The Defendants propose the following rates and billable hours for the professionals who worked on the case.

| TIMEKEEPER | TITLE | PROPOSED RATE | INVOICE DATE | | | | | | | | | | TOTAL HOURS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 5/11/2011 | 6/15/2011 | 6/30/2011 | 8/11/2011 | 9/27/2011 | 10/5/2011 | 11/3/2011 | 12/3/2011 | 12/31/2011 | 2/16/2012 | |
| Jacqueline Barclay | Other | 200 | | | | 1.2 | | | | | | | 1.2 |
| Lameke Cannon | Associate | 300 | | 2.2 | 6.2 | 0.2 | | | | | | | 8.6 |
| Thomas Cohn | Of Counsel | 600 | 29.7 | 43.8 | 31 | 12.9 | 25.9 | 16.6 | 5.9 | 15.6 | 24.1 | | 205.5 |
| Julia Davis | Associate | 300 | | 6 | 1.8 | | | | | | | | 7.8 |
| Michael Denci | Summer | 300 | | | 36.5 | 7.2 | | | | | | | 43.7 |
| Michael Hartmere | Associate | 300 | | | | | | | | | | 3.3 | 3.3 |
| Edward Larkin | Partner | 600 | 19.7 | 32.7 | 25.4 | 26.8 | 29.2 | 15.6 | 3.7 | 8.4 | 30.1 | 3.5 | 195.1 |
| Heather Maly | Associate | 300 | 2.4 | 8.9 | 43.9 | 57.9 | 76.7 | 45.4 | 9.5 | 16.5 | 31.8 | 5.2 | 298.2 |
| Radka Petrova | Paralegal | 215 | 3 | 1.5 | | | | | | | 7.8 | | 12.3 |
| Adam Possidente | Associate | 300 | | | | | 26.7 | 39.9 | | | 1.3 | | 67.9 |
| Orlando Salcedo | Paralegal | 225 | | 0.5 | 0.1 | | | | | | | | 0.6 |
| Sumit Som | Associate | 300 | | | | 40.2 | 29.8 | | | | 0.5 | | 70.5 |
| Richard Trotter | Associate | 300 | | 0.6 | | | | | | | | | 0.6 |
| Kevin Yost | Other | 190 | | | | 16.7 | 10.1 | | | 1.6 | 5.9 | | 34.3 |

[Docket No. 4, Ex. I].

In support of these claimed rates and hours, Defendants offered four other pieces of evidence. First, they offered a declaration from Venable attorney Edwin M. Larkin (the "Larkin Declaration" or "Larkin Dec."). [Docket No. 40]. The Larkin

Declaration indicates that three attorneys - partner Edwin M. Larkin ("Larkin"), of counsel Thomas A. Cohn ("Cohn"), and associate Heather Maly - were the principal attorneys who worked on the case.[1]  [Larkin Dec. ¶ 14].  The Larkin Declaration further indicates that these attorneys typically bill out at $800, $650, and $415 an hour respectively.  [Id.].  However, the Larkin Declaration acknowledges that the prevailing market rates in this vicinage are lower than these rates and instead requests $600 an hour for partners and of counsel working on the case and $300 an hour for associates working on the case. [Id. ¶¶ 16-17]. The Larkin Declaration also described the nature of Venable's work on the case.

Specifically, Venable: (1) reviewed approximately 21,500 documents to respond to FTC discovery requests; (2) engaged in numerous conference calls with the FTC relating to document production efforts; (3) contacted numerous third parties to obtain relevant information; (4) compiled, reviewed, and produced various financial statements; (5) negotiated and finalized the temporary restraining order; (6) participated in court conferences; (7) opposed a motion to strike Defendants' affirmative defenses; (8) prepared for, and defended, a Rule 30(b)(6) deposition and the deposition of Defendant Andrew

---

[1]      In addition to Larkin, Cohn, and Maly, associates Lameke Cannon, Julia Davis, Richard Trotter, Adam Possidente, Sumit Som, and Michael Hartmore and summer associate Michael Denci billed time on the matter.

Davidson; (9) negotiated a protective order; and (10) negotiated and settled the matter.  [Id. ¶ 20].

Second, Defendants submitted National Law Journal billing surveys from 2010 and 2011, which report data about the ranges various firms charge at the partner and associate level. [Docket No. 40, Exs. G and H].  The surveys, which appear to be based on self-reporting by law firms[2], do not indicate, however, whether the type of work performed by the firms was similar to the work performed here in nature or complexity, and they do not indicate whether the professionals performing them are similar to the professionals here.  [Id.].  And the 2010 survey includes only one firm, Archer & Greiner, that is in the Southern New Jersey region where this Court sits, while the 2011 survey includes no firms in this region.  [Id.].

Third, Defendants submitted a declaration from Cohn (the "Cohn Declaration" or "Cohn Dec.").  [Docket No. 46].  The Cohn Declaration explains that, in Cohn's view, the hours billed in this matter were driven by the FTC's "aggressive approach" to litigating this case and that Defendants took steps to minimize costs by not serving any affirmative discovery and by filing no

---

[2]    "The 2010 NLJ Billing Survey,"
       http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202475563622 ("*The National Law Journal* asked the respondents to its 2010 survey of the nation's 250 largest law firms to provide a range of hourly billing rates."); "A nationwide sampling of law firm billing rates," http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202535905815&interactive=true ("The National Law Journal asked the respondents to its 2011 survey of the nation's 250 largest law firms to provide a range of hourly billing rates.").

motions in response to the FTC's discovery requests.  Cohn Dec.
¶¶ 7 - 20].

Fourth, Defendants submitted a declaration from Defendant
Andrew Davidson (the "Davidson Declaration" or "Davidson Dec.").
[Docket No. 47].  The Davidson Declaration explains that the
$4,500 Davidson was allotted each month was used for basic
living expenses and that the amount unspent at the end of each
month was, at most, $100.  [Davidson Dec. ¶¶ 9-10].

2.   The FTC's Response

The FTC opposes Defendants' motion.  It does not dispute
Venable's costs.  It does, however, argue that neither the
claimed rates, nor billable hours, are justified.  The FTC has
submitted a detailed listing of objections to each time entry
submitted by Defendants.  [Docket No. 45, Ex. 2].  Among other
things, it also submitted: (1) an exhibit detailing instances in
which monthly invoice's total hours listed are not supported by
the actual billing entries for the month [Docket No. 45, Ex. 4];
and (2) declarations from two attorneys who defended FTC actions
in this vicinage detailing the experience and rates of the
professionals who worked on the actions from their respective
firms, the total billed on the matters, and a high-level
breakdown of the work performed.  [Docket No. 45, Exs. 9-10].
According to the declarations, on two similar matters, an
attorney with four years of experience billed at $275 an hour,

an attorney with nine years of experience billed at between $325 and $350 an hour, and a senior partner at a firm billed at $395 an hour.  [Docket No. 45, Ex. 9 ¶¶ 2, 3, 5; Docket No. 45, Ex. 10 ¶¶ 2-4].  In one matter – an FTC action and companion state case – the total charged was $108,548.27.  [Docket No. 45, Ex. 9 ¶ 6].  In the other matter, the total charged was $25,000.  [Docket No. 45, Ex. 10 ¶ 6].  Based on these declarations, the FTC submitted its own proposed rates that it contends are reasonable for the work performed and the experience of the professionals who performed it.  [Docket No. 45, Ex. 2].  They propose a fee schedule of $350 an hour for Larkin and Cohn, $275 an hour for associates with 4 or more years of experience, $225 an hour for associates with less than 4 years experience, $150 an hour for summer associate time, $100 an hour for paralegal time, and $75 an hour for other support staff.  [Id.].

II.  Analysis

Defendants argue that this Court should undertake a lodestar analysis.  Under that analysis, courts award attorney's fees based on the hours reasonably expended by counsel at a reasonable hourly rate.  T.B. v. Mount Laurel Bd. of Ed., No. 09-4780, 2012 WL 1079088, at *2 (D.N.J. Mar. 30, 2012)("The starting point for this Court's determination of reasonable attorney's fee is calculation of the lodestar amount, which is the number of hours reasonably expended multiplied by a

reasonable hourly rate.")(quotation omitted).  Defendants claim that their submitted hours and proposed rates are reasonable.  The FTC disputes both the propriety of using a lodestar analysis and the reasonableness of Defendants' claimed rates and hours.

A.    Propriety Of Lodestar Formula

The FTC argues that:

(1)   this is not a statutory fee-shifting type case where a lodestar-type analysis would be appropriate;

(2)   this Court has the discretion to, and should, deny the release of further funds to ensure that adequate funds are available for consumer redress or disgorgement;

(3)   courts, as a matter of equity, "regularly refuse to or significantly limit the payment of legal costs from ill-gotten gains;" and

(4)   Venable "assumed the risk of not being paid when it consented to represent Defendants knowing their assets were frozen."

This Court disagrees.[3]

---

[3]   The FTC also argues, in passing, that release of further funds is improper because Venable should have sought fees from amounts withdrawn by the Defendants for business and living expenses.  [Docket No. 45, p. 4 n.3].  This Court disagrees for three reasons.  First, as a legal matter, the Stipulated Order itself does not call for fees to be reduced based on Defendants' ability to pay on this basis.  It provides for court approval of attorney's fees from Defendants' frozen assets based on whether the "fees and costs" are "reasonably incurred," not whether Defendants' use of other released funds was reasonable.  Second, even if this Court could consider the Defendants' use of the frozen funds as part of its reasonableness analysis, it cannot say, on the record before it, that their use of funds was unreasonable.  Defendants submitted a declaration that these funds were almost entirely used for basic living expenses and there were essentially no funds left over from which Venable could seek recovery.  [Docket No. 47, Declaration of Andrew Davison ¶¶ 9-11].  Third, even if this Court could consider the Defendants' use of the funds and it was unreasonable, it would be of little moment because the amount of legal fees at issue is far greater than the approximately $38,000 withdrawn by the Defendants.

First, even though this is not a statutory fee-shifting
case, a lodestar type analysis is nonetheless appropriate.  The
lodestar method is a "widely accepted" means of determining
reasonable attorney's fees and courts have use that method to
calculate reasonable attorney's fees, even where the basis to do
so is non-statutory, like here.  F.H. Krear & Co. v. Nineteen
Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987)(applying New
York law and using lodestar analysis where contract called for
award of attorney's fees); Montoya v. Creditors Interchange
Receivable management, LLC, No. 10-3037, 2011 WL 2437474, at *1
(C.D. Cal. June 17, 2011)(applying lodestar to calculate
reasonable attorney's fees in settlement agreement that called
for fee-shifting); First Fed'l Saving and Loan Ass'n of
Rochester v. U.S., 88 Fed.Cl. 572, 587 (Fed. Cl. 2009)(noting
that the lodestar method is a "widely accepted mode of
determining reasonable attorneys' fees" and using that method
where such fees were authorized by agreement); See also Hensley
v. Eckerhart, 461 U.S. 424, 433 (1983)("The most useful starting
point for determining the amount of a reasonable fee is the
number of hours reasonably expended on the litigation multiplied
by a reasonable hourly rate."); City of Burlington v. Dague, 505
U.S. 557, 561 (1992)("We have established a 'strong presumption'
that the lodestar represents the 'reasonable' fee.")(quotation
and citation omitted); Litton Indus., Inc. v. Imo Indus., Inc.,

200 N.J. 372, 386 (N.J. 2009)(applying New Jersey law and using lodestar analysis where contract called for award of attorney's fees).

Second, the concern for ensuring full "victim" redress[4] is less forceful, if not entirely inapplicable, given the fact that this proceeding concluded with Defendants settling without admitting to liability.  To the extent the need to compensate alleged victims remains a factor, this Court already previously held, and the FTC did not dispute, that the Defendants' requested attorney's fees did not compromise "the fairness, adequacy, and reasonableness" of the FTC's recovery.   FTC v. Circa Direct, No. 11-2172, 2012 WL 2178705, at *4 (D.N.J. June 13, 2012).

---

[4]    The FTC's cited cases for this proposition all address either: (1) a request for attorney's fees after a preliminary injunction but before the case is concluded; or (2) a request for attorney's fees after a trial and the entry of a permanent injunction. See FTC v. Sharp, No. 589-870, 1991 WL 214076, at *1-2 (D. Nev. July 23, 1991)(denying release of frozen assets after preliminary injunction had been entered but while case was still proceeding);  FTC v. Jordan Ashley, Inc., No. 93-2257-CIV, 1994 U.S. Dist. Lexis 7577, at *10 (S.D. Fla. May 3, 1994) (denying release of frozen funds after a trial had been conducted and a permanent injunction entered and where there was risk that victims might be deprived of full redress); FTC v. RCA Credit Servs., LLC, No. 08-cv-2062, 2008 WL 5428039, at *4 (M.D. Fla. Dec. 31, 2008)(recognizing that a court, following a preliminary injunction, but before the conclusion of the litigation, is within its discretion to deny attorney's fees "if the frozen assets fall short of the amount needed to compensate consumers for their losses").  In the former, the courts were motivated by the potential that the frozen funds would be insufficient for consumer redress, if the claims were proven, at the conclusion of the case.  Id.  In the latter, the motivation was the risk, with the claims having been proven, that there would be insufficient funds for consumer redress.  Id.  Here, in contrast, the case has concluded without any claims having been proven.

Third, the cases cited by the FTC do not support the proposition that there is an independent equitable consideration with respect to the use of ill-gotten gains to fund attorney's fees, beyond the need to preserve assets for consumer redress.[5] But, to the extent there is, it is again inapplicable here. This litigation concluded with a settlement <u>without</u> an admission of liability from Defendants.  Therefore, there has been neither an admission by Defendants, nor adjudication by this Court, that the funds at issue represent ill-gotten gains.

Fourth, while Venable assumed the risk of not being paid when they consented to representing Defendants after Defendants' assets were frozen, the FTC equally assumed the risk that Venable <u>would</u> be paid when it agreed to allow for an award of attorney's fees by the Court in negotiating the Stipulated Order and pressed this Court for approval of the Stipulated Order, even after Defendants had moved for attorney's fees.

In sum, it is disingenuous for the FTC to complain of the need for victim redress, that the assets at issue represent ill-gotten gains, and that Venable assumed the risk of not being

---

[5]    See <u>CFTC v. Noble Metals Int'l</u>, 67 F.3d 766, 775 (9th Cir. 1995)(affirming district court's denial of release of frozen assets for attorney's fees after a preliminary injunction had been entered but before wrongdoing had been "proved" where there was concern that frozen assets "fell far short of the amount" for consumer redress); <u>FTC v. World Wide Factors, Ltd.</u>, 882 F.2d 344, 347 (9th Cir. 1989)(approving of limiting amount of attorney's fees, on preliminary injunction, "out of concern for preserving funds for ultimate distribution to defrauded customers"); <u>FTC v. Central Coast Nutraceuticals, Inc.</u>, 1:10-cv-04931, slip op. at 2 (N.D. Ill. May 29, 2011).

paid when the FTC: (1) approved of a settlement without an admission of liability; (2) agreed to an award of reasonable attorney's fees as part of that settlement; and (3) vigorously defended the propriety of that settlement, while Defendants' motion for fees was pending, before this very Court.

B.   Defendants' Claimed Rates And Hours

The FTC also argues that, even under a lodestar analysis, both Defendants' claimed rates and claimed hours are unreasonable.  The Court addresses each issue in turn.

1.   Defendants' Claimed Rates

"[A] reasonable hourly rate should be determined by examination of the prevailing market rate in the relevant community at the time of the fee petition, not the time the legal services were performed.  A court should assess the skill and experience of the . . . attorneys and compare their rates to the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  L.J. v. Audubon Bd. of Educ., 373 F. App'x 294, 296 (3d Cir. 2010)(quotations and citation omitted).

The party seeking to recover attorney's fees has the initial burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case."  Id.  That burden is ordinarily met

through the submission of "affidavits prepared by other attorneys in the relevant legal community."   Access 4 All, Inc. v. Boardwalk Regency Corp., 08-3817, No. 2012 WL 3627775, at *4 (D.N.J. June 28, 2012).  Where that initial burden is met, the burden shifts to the party disputing the fees to rebut the reasonableness of the proposed fees.  T.B., 2012 WL 1079088, at *3.  They must do so with "actual evidence" and not mere argument.  Id.  If they submit only the latter, the court has no discretion to adjust the requested rate downward.  Id.  In contrast, if they do submit appropriate evidence, "the court must conduct a hearing to determine the reasonable market rates," unless the court can "fairly decide disputed questions of fact" without the need for a hearing.  T.B., 2012 WL 1079088, at *3; Drelles v. Metropolitan Life Ins. Co., 90 F. App'x 587, 591 (3d Cir. 2004).

However, if "a district court finds that the [party seeking fees] has failed to sustain its burden with respect to a reasonable market rate, it may use its discretion to determine the market rate" and no hearing is necessary.  L.J., 373 F. App'x at 297 (affirming district court's setting of attorney rates, without hearing, where the party seeking fees had failed to meet its initial burden).  In exercising its discretion, "a district court should not determine the hourly rate based upon a

14

generalized sense of what is customary or proper, but rather must rely on the record." Id.

Here, the relevant market community in assessing reasonable market rates is southern New Jersey because: (1) this Court sits in the Camden Vicinage of the District of New Jersey, which comprises southern New Jersey; and (2) there is no evidence that law firms in southern New Jersey would be unwilling or unable to represent the Defendants.[6] L.J., 373 F. App'x at 296-97 (affirming district court's use of southern New Jersey rate) Teamsters Pension Fund of Phila. and Vicinity v. R.E. Pierson Contracting Co., No. 11-5051, 2012 WL 5880303, at *2 (D.N.J. Nov. 20, 2012)(using southern New Jersey rate); Access 4 All, 08-3817, No. 2012 WL 3627775, at *4 (same); D'Orazio v. Washington, No. 07-5097, 2011 WL 6717427, at *2 (D.N.J. Dec. 21, 2011)(same); Connor v. Sedgwick Claims Mgmt. Servs., Inc., No. 09-cv-1140, 2012 608483, at *4 (D.N.J. Feb. 23, 2012)(same); Public Interest Research Grp. of N.J. v. Windall, 51 F.3d 1179, 1187 (3d Cir. 1995)(allowing for entire District of New Jersey to serve as relevant community where there was evidence that "few southern New Jersey law firms were available that were willing to represent the" plaintiff).

---

[6]     In fact, the FTC's submission of affidavits from attorneys
        who have handled similar matters suggests that Defendants
        would have had little trouble in securing effective
        representation in southern New Jersey.

Having determined that southern New Jersey is the relevant legal market, it was Defendants' burden to establish that their requested rates were reasonable for the market.  They failed to do so.  Defendants did not submit affidavits from attorneys who have practiced in this market.  Instead, Defendants' sole submission relating to rates within the southern New Jersey market was the National Law Journal survey that included local law firm Archer & Greiner.  And this Court affords no value to that survey because it: (1) is unsworn and based on self-reported figures by firms; (2) provides only a broad range of attorney's fees, without regard to the nature of the work performed or experience and skill of those performing it; and (3) contains no information as to reasonable rates for non-attorney personnel.  Therefore, this Court may exercise its discretion, based upon the record before it, but without holding a hearing, to determine reasonable rates.

Exercising its discretion, this Court finds that:

(1)   a rate of $400 an hour is warranted for the most senior attorneys working on this matter – Thomas Cohn, who has over 15 years experience and particularized FTC experience, and Edward Larkin, who also has over 15 years of experience;

(2)   a rate of $350 an hour is warranted for Michael Hartmere, who has over 12 years of experience.

(3)   a rate of $275 an hour is warranted for associates Lameke Cannon and Heather Maly, who each had four years of experience;

(4)   a rate of $225 an hour is warranted for
      associates Julia Davis, Sumit Som, Adam
      Possidente, who had between two and three years
      of experience;

(5)   a rate of $200 an hour is warranted for associate
      Richard Trotter, who had one year of experience;

(6)   a rate of $150 an hour is warranted for summer
      associate Michael Denci;

(7)   a rate of $100 an hour is warranted for Radka
      Petrova and Orlando Salcedo – paralegals who
      worked on the case; and

(8)   a rate of $75 an hour is warranted for Jacqueline
      Barclay and Kevin Yost – support staff who worked
      on the case.

These rates are reasonable in light of the declarations

submitted by the FTC, prior courts' consideration of fee

applications for cases in this vicinage, and the FTC's own

concession of what are reasonable rates.  First, the rates set

forth in the two declarations submitted by the FTC showed that:

(1)   an attorney of similar experience level to Cohn and
      Larkin commanded $395 an hour on a similar matter;

(2)   an attorney with less experience than Hartmere
      commanded $350 on a similar matter; and

(3)   an attorney with the same experience level as Cannon
      and Maly, and more than Davis, Som, Possidente,
      Trotter, and Denci commanded $275 an hour on a similar
      matter.

Second, the rates are well within those that have been

previously approved.  Courts have approved rates between $115

and $750 for matters litigated in this vicinage for attorneys,

depending on the attorneys' experience and skill, and between

$75 and $110 an hour for non-attorney work.  D'Orazio, 2011 WL 6717427, at *4 (approving of $250 an hour rate for attorneys); Warren Distrib. Co. v. InBev USA, LLC, No. 07-1053, 2011 WL 770005, at *12-13 (D.N.J. Feb. 28, 2011)(approving of fees between $200 and $750 an hour where such fees were supported by documentary evidence); Access, 2012 WL 362775, at *6-7 (approving of $360 an hour for attorney work and $75 an hour rate for paralegal work); Employers Ins. Co. of Wausau v. Harleysville Ins. Co. of N.J., No. 05-4900, 2008 WL 5046838, at *4 (D.N.J. Nov. 20, 2008)(approving of rates between $115 and $145 an hour for attorneys and between $100 and $110 an hour for paralegal work); Baughman v. U.S. Liability Ins. Co., 723 F. Supp. 2d 741, 748 (D.N.J. 2010)(approving of rates between $225 and $325 an hour); Connor, 2012 WL 608483, at *6 (approving of a rate of $85 an hour for paralegal work).  Third, the FTC itself, in connection with its briefing, generally proposed similar or identical rates to what this Court has adopted.  Access 4 All, 2012 WL 3627775, at *7 (adopting paralegal rate that was conceded by party opposing fees).

    2.  Defendants' Claimed Hours

In objecting to a fee application, a party "cannot merely allege in general terms that the time spent was excessive." Bell v. United Princeton Properties, Inc., 884 F. 2d 713, 720 (3d Cir.

1989).   Rather, the party must "generally identify the type of
work being challenged, and second, they must specifically state
the adverse party's grounds for contending that the hours
claimed in that area are unreasonable."   Id. However, this does
not mean that a party challenging a fee award must always chal-
lenge specific time entries. Indeed, "[i]t would be nearly im-
possible, or at least extraordinarily burdensome, for parties
who wish to contend that the time spent by a fee applicant was
excessive in light of counsel's expertise, or in light of the
simplicity of the case, or who wish to raise some similar con-
tention that might affect an entire category of work done by
counsel, to point to all the entries that they believe to be un-
reasonable."   Here, the FTC makes a number of arguments in oppo-
sition to Defendants' claimed hours.   The Court addresses each
in turn.

      a.   <u>Failure To Delegate</u>

    The first FTC argues that Venable failed to delegate work
to lower paid staff.   While the FTC objects to numerous time
entries on this basis, it specifically addresses five in its
briefing: (1) time spent by Larkin reviewing a standard
confidentiality order; (2) time spent by Larkin communicating
the costs of Davidson's water heater repairs; (3) preparation of
monthly expenditure reports by Larkin, Cohn, and Maly; (4)
preparation and filing of pro hac vice applications by Maly; and

(5) the gathering, and review, of materials responsive to the FTC's document requests by Larkin, Cohn, and Maly.

As an initial matter, given the compressed rate schedule this Court has adopted, any failure to delegate would be of diminished significance. But, more importantly, the examples cited by the FTC in its brief do not appear to be instances in which Venable failed to properly delegate.

First, Larkin's review of the confidentiality order came in two time entries totaling 2.4 hours and in which several other activities are also listed. Even if Larkin spent a full 2.4 hours reviewing the confidentiality order, which he did not, that would have been a reasonable amount of time to review the order and Larkin would have been a reasonable person to review it, given the need for Larkin, as the senior attorney for Defendants, to offer an informed judgment on the appropriateness of the order.

Second, the time spent by Larkin regarding the water heater was captured by a single entry, totaled only 0.5 hours, and also included time for a phone call with the FTC regarding the attorney's fees motion. Given the limited amount of time at issue, and the fact that it would likely take a similar amount of time simply for Larkin to meet with an attorney to delegate this task, the Court cannot conclude that this entry represents a failure to delegate.

Third, it was reasonable for Larkin, Cohn, and Maly to be charged with the task of preparing monthly expenditure reports, given that Larkin and Cohn were the senior attorneys on the matter and Maly the primary associate.

Fourth, as a mid-level associate, Maly would be an appropriate person to prepare pro hac vice applications.

Fifth, Larkin, Cohn, and Maly's work in collecting and reviewing documents responsive to the FTC's discovery requests was appropriate, in light of their roles in the case and the fact that the brunt of the actual document review appears to have been conducted by Maly and other more junior associates. And, while the FTC contends that document collection and review is work that could be delegated to paralegals (Docket No. 45, p. 8, "Moreover, while the firm's paralegals sat idle, these top three billers spent dozens of hours gathering and reviewing materials responsive to the FTC's discovery requests."), it is generally recognized that document review efforts are appropriately addressed by attorneys and not paralegals.

Having considered these specifically cited examples, and having individually reviewed each of Venable's time entries, this Court finds that Venable appropriately delegated and distributed work.

   b. <u>Excessive And Duplicative Staffing</u>

Next, the FTC complains of excessive and duplicative
staffing by Venable.  Again, while the FTC objects to numerous
time entries on this basis, it specifically addresses four in
its briefing: (1) the travel and attendance of Larkin, Cohn, and
Cannon at a scheduling conference; (2) review of the preliminary
injunction order, which differed little in substance from the
TRO, by Larkin and Cohn and communications between the two
regarding the same; (3) research, preparation, and review of
Defendants' response to the FTC's motion to strike, for which
Larkin, Cohn, Maly, and Denci all billed hours; and (4) billing
by Cohn, Larkin, Maly, Possidente, and Hartmere on Defendants'
attorney's fees application.

First, with respect to the scheduling conference, this
Court will not credit time spent by Cohn and Cannon travelling
to and attending the conference.  It was only necessary for one
attorney to attend the conference and, because Larkin was the
sole partner on the matter, it was appropriate that he attend.
Therefore, this Court deducts 5.3 hours from Cohn and 5.7 hours
from Cannon.

Second, the time spent by Cohn and Larkin with respect to
the preliminary injunction order appears to have been reasonable
and non-duplicative.  Based on the entries, Cohn appears to have
assumed primary responsibility for the review and editing of the

order, while Larkin managed communications with the client and the FTC.

Third, the time spent drafting an opposition to the motion to strike does not appear duplicative as each attorney working on the opposition brief appears to have had a distinct role. Neither can this Court conclude that the amount of time spent on it was unreasonable.

Fourth, "[a] party entitled to a fee award is also entitled to reimbursement for the time spent to prepare a fee application." Access, 2012 WL 3627775, at *7. And, here, the Court cannot say that the hours spent on the attorney's fees motion were unreasonable.

### c.   Undocumented Entries

Third, the FTC argues, and Defendants do not dispute, that, in two instances, Venable's monthly invoices did not properly document the total hours claimed:

(1)   Venable's October 3, 2011 bill claims 5.9 hours for Cohn, 3.7 hours for Larkin, and 9.5 hours for Maly but only documents 4.3, 2.4, and 5.3 hours for these attorneys respectively; and

(2)   Venable's 12/3/2011 bill claims 15.6 hours for Cohn, 8.4 hours for Larkin, and 16.5 hours for Maly but only documents 10.8, 4.1, and 14.5 hours for these attorneys respectively.

This Court's independent calculation of the hours documented is consistent with the FTC's.  The Court will therefore deduct

those hours that are claimed but not properly documented.

> ### d.   Block Billing and Vagueness

Fourth, the FTC argues that Venable's time entries are deficient because they are block billed and are vague.  However, time entries must only "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." Warren Distrib. Co., 2011 WL 770005, at *17 (citation and quotation omitted).  Block billing is no exception to this rule and blocking billing "will be upheld as reasonable if the listed activities reasonably correspond to the number of hours billed."  Id.  And, here, the entries are sufficiently specific for the Court to find that, aside from the deficiencies noted above, the listed activities reasonably correspond to the hours claimed.

> ### e.   General Objections

Finally, the FTC argues that, as a general matter, Venable's fees are unreasonable in light of the total fees charged in the two matters for which attorneys submitted declarations – $108,548.27 and $25,000.  This Court disagrees for three reasons.  First, the total amount of fees at issue has already been substantially reduced by this Court's reduction to Venable's rates and hours, making the disparity between the fees less dramatic.  Second, the FTC's purported comparisons offer little to establish that these actions are useful comparisons as

to the number of reasonable hours expended.  They do not provide
a detailed breakdown of the fees incurred and, particularly,
whether there was extensive document discovery in those cases as
there was in this matter.  Nor do they discuss the amount in
controversy, which was substantial here, and which could
motivate a greater expenditure of time.  Third, this Court
already concluded that, aside from the deficiencies noted above,
Venable's time spent was reasonable.

III. <u>Conclusion</u>

      Having reviewed the parties' submissions, the Court finds
that reasonable attorney's fees in this matter total $279,095.00.
That total is based on the following data:

| TIMEKEEPER | HOURS | RATE | FEES |
|---|---|---|---|
| Jacqueline Barclay | 1.2 | 75 | $90.00 |
| Lameke Cannon | 2.9 | 275 | $797.50 |
| Thomas Cohn | 193.8 | 400 | $77,520.00 |
| Julia Davis | 7.8 | 225 | $1,755.00 |
| Michael Denci | 43.7 | 150 | $6,555.00 |
| Michael Hartmere | 3.3 | 350 | $1,155.00 |
| Edward Larkin | 189.5 | 400 | $75,800.00 |
| Heather Maly | 292.0 | 275 | $80,300.00 |
| Radka Petrova | 12.3 | 100 | $1,230.00 |
| Adam Possidente | 67.9 | 225 | $15,277.50 |
| Orlando Salcedo | 0.6 | 100 | $60.00 |
| Sumit Som | 70.5 | 225 | $15,862.50 |
| Richard Trotter | 0.6 | 200 | $120.00 |
| Kevin Yost | 34.3 | 75 | $2,572.50 |
| | **TOTAL:** | | $279,095.00 |

Because Venable was already paid $150,000, the Court authorizes the release of an additional $129,095 from the frozen funds.  It also authorizes the release of $6,139.47 to compensate Venable for expenses, which were presented to this Court without objection by the FTC.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: December 17, 2012